**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ASHLY DRAKE SMITH,

      Petitioner,                      CASE NO. 2:16-CV-11654
                                            HONORABLE SEAN F. COX
v.                                     UNITED STATES DISTRICT JUDGE

THOMAS WINN,

      Respondent,

_____/

<u>**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**</u>
<u>**AND GRANTING A CERTIFICATE OF APPEALABILITY**</u>

      Ashly Drake Smith, ("Petitioner"), incarcerated at the Thumb Correctional Facility in

Lapeer, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 through

his counsel Christopher M. Smith of the State Appellate Defender Office, in which he challenges

his convictions for armed robbery, Mich. Comp. Laws, § 750.529; first-degree home invasion, Mich.

Comp. Laws, § 750.110a(2); larceny in a building, Mich. Comp. Laws, § 750.360, felon in

possession of a firearm, Mich. Comp. Laws, § 750.224f; and possession of a firearm in the

commission of a felony, Mich. Comp. Laws, § 750.227b. For the reasons stated below, the petition

for writ of habeas corpus is **DENIED WITH PREJUDICE.**

## I. Background

      Petitioner was convicted following a bench trial in the Wayne County Circuit Court before

Judge David J. Allen. This Court recites verbatim the relevant facts regarding petitioner's

conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581

F.3d 410, 413 (6th Cir. 2009):

Defendant's convictions arise from the armed robbery of the victim. The victim was in his upstairs bedroom playing a game on his telephone when he heard the downstairs door shut. The victim lived with his brother and was anticipating his brother's return home from work. He heard footsteps and saw defendant "pop" into his room with a gun. Although he did not know defendant's name, the victim recognized defendant from a local bar. Defendant pointed a gun at the victim and demanded his wallet and marijuana. The victim had a medical marijuana card and was growing marijuana in his home for personal, medical use. However, the victim admitted to illegally selling marijuana to a man named Terry and Terry's friend. Defendant ordered the victim to the ground and a second man [1] entered the room from the hallway. The men took the victim's wallet, marijuana, and some electronic devices. The entire robbery lasted approximately two minutes. After the men left, the victim used a laptop computer to log onto Facebook and ascertain defendant's name from waitresses at the bar defendant frequented. The victim admitted that he made derogatory racial remarks about defendant and threatened to have a bullet waiting for the thief if he returned to the victim's home. Although the robbery occurred at approximately 7:30 p.m., the victim waited until his brother arrived at 9:10 p.m. to call the police. The victim testified that he was "110% sure" that defendant was the armed robber.

Defendant's theory of the case was that the victim had an issue with defendant's racially mixed heritage and the fact that defendant was dating a Caucasian female as evidenced by the victim's disparaging racial slurs against defendant. Consequently, defendant theorized that if a robbery occurred, the victim identified defendant only because of racial animosity, a claim which the victim denied. Defense counsel elicited testimony from the victim that he wrote on Facebook that he was "pretty sure" that defendant committed the crime. Additionally, defense counsel subpoenaed four witnesses to appear at defendant's trial, to raise the defense of alibi. However, defense counsel chose to limit the defense to the attack on the credibility of the victim and excused the witnesses. Defendant expressly agreed with that strategy on the record. Although the trial judge initially questioned the credibility of the victim and admonished him regarding his improper remarks, the court ultimately concluded that the victim's identification was credible, and defendant was convicted as charged.

This Court granted defendant's motion to remand for a *Ginther* [2] hearing. *People v. Ashly Drake Smith*, unpublished order of the Court of Appeals, entered June 19, 2013 (Docket No. 312721). On remand, the court heard testimony from trial counsel Susan Reed, defendant, and three alibi witnesses. Defendant argued that trial counsel failed to investigate and present witness testimony, thereby depriving

---

[1] The victim was unable to definitively identify the second perpetrator. (Footnote original).

[2] *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973)(Footnote original).

defendant of a substantial defense. The court rejected the claim, concluding that defense counsel's action constituted trial strategy, defendant agreed with the trial strategy on the record, and the alibi witnesses would not have made a difference in the outcome of the trial because of inconsistencies in their testimony.

*People v. Smith*, No. 312721, 2014 WL 1320243, at * 1–2 (Mich. Ct. App. Apr. 1, 2014).

A majority of the Michigan Court of Appeals affirmed petitioner's conviction on appeal. *Id.,* *2-4. Judge Gleicher dissented and concluded that counsel was ineffective for failing to present an alibi defense. *Id.,* * 4-10.

Petitioner filed an application for leave to appeal, which was denied by a majority of the Michigan Supreme Court. *People v. Smith,* 467 Mich. 1003, 861 N.W. 2d 630 (2015). Justice Kelly, joined by Justices Bernstein and McCormack, dissented from the majority opinion and indicated that she would grant petitioner a new trial because she believed that counsel had been ineffective. *Id.* 861 N.W. 2d at 630-34.

Petitioner seeks a writ of habeas corpus on the following ground:

THE STATE APPELLATE COURT ACTED CONTRARY TO *STRICKLAND* BY ASSESSING THE REASONABLENESS OF COUNSEL'S ALIBI INVESTIGATION AT THE MOMENT OF TRIAL, RATHER THAN AT THE MOMENT THE ALIBI NOTICE DEADLINE EXPIRED. IT ALSO UNREASONABLY APPLIED *STRICKLAND'S* PERFORMANCE PRONG WHEN IT UPHELD AN ELEVENTH HOUR INVESTIGATION CONDUCTED ON THE DAY OF TRIAL.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore,

pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert,* 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

Moreover, "[T]he fact that there was a dissenting opinion on direct review [of petitioner's claim]...does not mean the majority's analysis was unreasonable." *Ambrose v. Romanowski*, 621 F.

App'x. 808, 814 (6th Cir. 2015).

## III. Discussion

Petitioner contends that trial counsel was ineffective in failing to adequately investigate or present an alibi defense.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes

6

the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

A *Ginther* hearing was conducted on petitioner's claim before Judge Mark T. Slavens, who was not the judge who presided over petitioner's trial.

Petitioner claimed that he had three alibi witnesses, Sarah Urban, Melissa Mulroy, and Timothy Mulroy, who would testify that he was with them at his apartment complex at 29685 Cherry Hill in Inkster, Michigan at the time of the robbery. The apartment complex was four miles from the crime scene in Westland, Michigan. (Tr., 8/8/13, pp. 48-50).

Sarah Urban and Melissa Mulroy testified that petitioner was at Ms. Urban's apartment between 6:30 p.m. and 8:30 p.m. on January 11, 2012, where the three shared chicken noodle soup and watched television. (*Id.*, pp. 74, 85). Petitioner spent most of that two-hour time period lying on Ms. Urban's couch, but on one or two occasions, petitioner went across the hall to his own apartment to call his girlfriend, who was hospitalized with the flu. (*Id.*, pp. 52-53, 71-74, 84-85). Ms. Urban testified that when petitioner left her apartment, he would come back within five or ten minutes. (*Id.*, p. 73). Ms. Mulroy, however, testified that petitioner may have been gone from Ms. Urban's apartment for up to twenty minutes. (*Id.*, p. 84).

Timothy Mulroy was petitioner's roommate. He had not been present in Ms. Urban's apartment. (*Id.*, p. 98). Mr. Mulroy had taken his girlfriend to dinner and a movie, before returning home at what he estimated to be around 7:00 p.m. Mr. Mulroy testified that when he entered the apartment, he saw petitioner sleeping on a futon. (*Id.*, pp. 106-07). A short time later, around 7:30 p.m., Mr. Mulroy received a telephone call from someone identifying himself as Nick Horn. The caller informed Mr. Mulroy that the victim had just been robbed and was accusing petitioner of being his assailant. Mr. Mulroy believed that all these events happened between 7 p.m. and 8 p.m., but admitted that "I don't know the exact time[.]" (*Id.*, pp. 108-110).

Sixteen months later, Mr. Mulroy signed an affidavit claiming that when Nick Horn called, "Ashly Smith was sleeping on the couch in Sarah Urban's apartment," not on the futon in his own apartment. At the *Ginther* hearing, Mr. Mulroy testified that this was a mistake, but he signed the affidavit because there was a "crunch for time." But Mr. Mulroy did not want to testify without correcting this mistake. (*Id.*, pp. 100, 111-113).

Ms. Susan Reed was petitioner's second attorney. Ms. Reed was appointed to represent petitioner at the arraignment in circuit court on May 21, 2012. (*Id.*, pp. 25-26). Ms. Reed had not met with petitioner at the time of the first pre-trial conference on June 4, 2012. By the time of the second and final pre-trial conference on July 12, 2012, Ms. Reed had only conferred with petitioner in the courtroom bullpen. (*Id.*, pp. 26, 28). Ms. Reed only met with petitioner at the Wayne County Jail the night before trial. (*Id.*, pp. 28, 31, 57).

Ms. Reed obtained an investigator, who served subpoenas on petitioner's alibi witnesses. Counsel was not sure whether the investigator had done anything beyond simply serving subpoenas. The investigator did not prepare any written reports, but she may have informed Ms. Reed about at least one witness's statement. (*Id.*, pp. 29-30). Timothy Mulroy testified that he might have spoken briefly spoken to an investigator, whereas Sarah Urban and Melissa Mulroy testified that they had not. (*Id.*, pp. 74, 86-87, 105). Ms. Reed and Mr. Mulroy may have briefly discussed Mr. Mulroy's proposed testimony before trial, but neither of them could be sure. (*Id.*, pp. 31, 105). Ms. Reed spoke with Ms. Urban and Ms. Mulroy on the day of trial. (*Id.*, p. 31). Prior to trial, Ms. Reed decided that if she presented an alibi defense, she would only call Timothy Mulroy. (*Id.*, p. 43). Ms. Reed explained:

> I find that the more you put witnesses on, as we know everybody remembers things
> differently and witnesses will tend to testify about what they remember, but it might

differ from what one of their friends remembers. And that was a concern at that point that if all four of them got on the stand then the prosecutor would be able to you know show discrepancies in everything they're saying, which that in itself I think would weaken the case.

(*Id*., p. 43).

Ms. Reed did not offer any rationale for choosing Timothy Mulroy over Sarah Urban and Melissa Mulroy. Petitioner and Ms. Urban testified that counsel indicated that she had picked Mr. Mulroy because he was dressed more nicely than the others. (*Id.*, pp. 66, 74).

Ms. Reed decided not to call any alibi witnesses after the prosecution rested its case-in-chief. Ms. Reed testified that "I thought the case was going in such a way that the alibi witnesses might have be[en] giving the prosecutor something to attack rather than focusing on their complainant." (*Id*., p. 32). Ms. Reed was also concerned by the alibi witnesses' statements that they were "in and out all day." (*Id.*, pp. 34, 41).

Counsel was unsure about whether she spoke with petitioner about not going forward with the alibi defense. (*Id*., pp. 38-40). The trial transcript, however, reflects this exchange:

THE COURT: Okay. People have rested. Ms. Reed, what's your pleasure?

MS. REED: Your Honor, I have subpoenaed witnesses on my client's behalf, but after the way the testimony has gone [in] and further discussion with my client I am not going to call the witness. Is that okay with you, mister –

MR. SMITH: Yes, ma'am.

THE COURT: Okay.

(Tr. 8/20/12, pp. 67-68).

Ms. Reed testified at the *Ginther* Hearing that "I gave him my opinion and what I thought we should do and he agreed." (Tr. 8/8/13, p. 40). Mr. Smith also testified, "[B]y her being a professional I guess I just went—I knew I wasn't guilty, so I just went along." (*Id*., p. 60).\

10

Ms. Reed admitted that she never filed an alibi notice or witness list, nor did she mention an alibi defense during the pre-trial conferences. Ms. Reed did not mention an alibi defense in her opening statement at the bench trial. (*Id.*, p. 32). Counsel did, however, mention the alibi witnesses to the trial prosecutor. The trial prosecutor informed Ms. Reed she would not object to the presentation of an alibi defense without notice. Ms. Reed was confident that the trial judge would have allowed the alibi defense despite the lack of notice. (*Id.*, p. 37).

The trial judge ultimately rejected petitioner's ineffective assistance of counsel claim and denied his request for a new trial. The trial judge ruled that counsel made a strategic decision not to present an alibi defense. The judge concluded that Ms. Reed made this choice based on the alibi witnesses' inability to account for petitioner for the entire time period during which the crime had been committed. (Tr. 8/9/13, pp. pp. 31, 36). The judge believed that the testimony at the *Ginther* hearing supported Ms. Reed's decision, because Timothy Mulroy believed that petitioner had been in his own apartment for most of the time period between 7 p.m. and 8 p.m., whereas Sarah Urban and Melissa Mulroy testified that he spent the majority of the time in Ms. Urban's apartment. (*Id.*, pp. 33-36). The trial court further ruled that counsel had conducted an adequate investigation. The judge noted that Ms. Reed knew about the alibi witnesses and took steps to subpoena them. The judge took judicial notice of the fact that many judges of the Wayne County Circuit Court will often allow defendants to present an alibi defense even when there has been no notice. (*Id.*, pp. 31, 37). The judge noted that petitioner agreed with counsel's decision and did not complain about her failure to present an alibi defense or her lack of communication until after the verdict. (*Id.*, pp. 32, 33, 38).

The trial judge further ruled that petitioner was not prejudiced by counsel's decision not to

present alibi defense. The judge based this determination on the "inconsistencies in these testimony [sic] between the two young ladies and the young man on where he was." (*Id.*, p. 38). The trial judge mentioned Ms. Reed's testimony that had she pursued an alibi defense, she would have called only one witness to avoid any inconsistencies. (*Id.*, p. 32).

The Michigan Court of Appeals also rejected petitioner's claim:

> Following an extensive review of the record, we cannot conclude that the trial court's factual findings were clearly erroneous and agree with the conclusions of law. Although trial counsel did not file a notice of alibi and did not move for a directed verdict in accordance with MCR 6.419(C), counsel explained that, in her experience practicing before the presiding judge, he would allow an untimely notice of alibi and generally denied motions for directed verdict. Appellate counsel failed to call any witnesses to contradict this testimony, and the judge presiding over the *Ginther* hearing did not hold to the contrary. In a bench trial, the court is presumed to know the applicable law and the difference between admissible and inadmissible evidence. In this case, the trial court exercised its discretion to conduct an orderly trial, and there is no indication that an untimely notice would have precluded the alibi defense. Indeed, the trial court allowed hearsay evidence from the investigating lieutenant in order to facilitate the trial schedule and prevent the recall of this witness to impeach the victim's testimony. Furthermore, even if trial counsel had moved for a directed verdict, the court is not required to decide the motion at that time, but may wait until the close of the proofs. See MCR 6.419(C). With regard to these claims, defendant failed to meet his factual predicate of demonstrating ineffective assistance.

> Defendant further alleges that trial counsel failed to investigate the alibi witnesses and present this substantial defense. Because the record and the trial court's factual findings do not substantiate this claim, we again disagree. Defense counsel Reed subpoenaed the witnesses who appeared at trial. However, after speaking to the witnesses, Reed testified that she opted not to call them at trial because they could not account for defendant's whereabouts during the time period of the robbery. In light of the failure to provide an "air tight" alibi, Reed opted, with defendant's express consent on the record, to proceed on a theory that attacked the credibility of the victim.

> The alibi testimony presented at the *Ginther* hearing supported Reed's concerns. The two female neighbors and friends of defendant, Sarah Urban and Melissa Mulroy, testified that he was in Urban's apartment, across the hall from his own apartment, sick on her couch between 6:30 and 8:30 p.m. However, Urban testified that defendant left the apartment twice for a few minutes. Melissa Mulroy testified that defendant left for a substantial period of time, twenty minutes. Defendant's

roommate, Timothy Allen Mulroy, Jr., submitted an affidavit that mirrored the claims of the female friends. However, Timothy testified at trial [sic] that defendant was asleep in their apartment on a futon at the time of the robbery. Timothy acknowledged that his testimony contradicted his affidavit, but he knowingly submitted the contrary affidavit because there was a time "crunch." The trial court held that the alibi witnesses failed to make a difference in the outcome of the case because a jury would not have found the testimony believable, and defendant agreed with Reed's trial strategy. In light of the findings of fact and conclusions of law, defendant failed to overcome the presumption of trial strategy, that we will not second-guess[,]. Unsuccessful trial strategy does not constitute ineffective assistance of counsel.

*People v. Smith*, 2014 WL 1320243, at * 3 (internal citations omitted).

As an initial matter, petitioner argues that this Court should not employ the AEDPA's deferential standard with respect to the prejudice prong of petitioner's ineffective assistance of counsel claim because the Michigan Court of Appeals did not reach the prejudice prong of the *Strickland* standard in rejecting petitioner's claim.

This Court cannot accept petitioner's argument for two reasons.

First, the Court is aware that the Sixth Circuit has several times ruled that when a state court only addresses one prong of the *Strickland* test in rejecting a habeas petitioner's ineffective assistance of counsel claim, the federal habeas court should review that prong under the AEDPA's deferential standard of review, but apply *de novo* review to the other prong. *See e.g. Rayner v. Mills,* 685 F. 3d 631, 636-39 (6th Cir. 2012). The Sixth Circuit, however, in a subsequent case, while continuing to follow this holding, noted that this is a "peculiar rule" that is contrary to both the letter and the spirit of § 2254(d). *See Hodges v. Colson,* 727 F. 3d 517, 537, n. 5 (6th Cir. 2013). The Sixth Circuit in *Hodges* believed that the panel in *Rayner* had ignored the Supreme Court's language in *Harrington* which indicated:

Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for

13

the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) *applies when a "claim," not a component of one, has been adjudicated.*

*Id.* (quoting *Harrington,* 562 at 98)(emphasis original).

The Sixth Circuit also noted in *Hodges* that their prior holding in *Rayner* created:

[t]he following peculiar rule: if the state court fails to given an explanation as to either prong, then full AEDPA deference is due to both prongs; but if the state court gives an explanation of one prong, then we do not give deference to the other. In other words, the more information the state court provides, the less deference we grant it. This is contrary not only to the language of the statute, which speaks of "claims" not components of claims, but also contrary to the spirit of § 2254(d), which is designed to give more deference to a state court judgment on the merits.

Moreover, as a matter of logic, a finding that counsel's performance was not deficient implicitly, but unequivocally, encompasses a finding that the performance did not prejudice the defendant. Indeed, it would be nonsensical to argue that a performance deemed to be constitutionally sufficient nevertheless prejudiced the defendant. It must be assumed that a state court's decision that performance was not deficient includes a decision that the performance was not prejudicial.

*Id.*

This Court believes that in light of the clear language in *Harrington,* the AEDPA's deferential standard of review applies to the prejudice prong of the *Strickland* ineffective assistance of counsel standard, even if the Michigan Court of Appeals did not explicitly address the prejudice prong of petitioner's ineffective assistance of counsel claim. Moreover, the Michigan Court of Appeals clearly found that trial counsel was not deficient. Such a finding "implicitly, but unequivocally, encompasses a finding that the performance did not prejudice the defendant." *Hodges,* 727 F. 3d at 537, n. 5. [3]

---

[3] The Court is aware that absent a clear directive from the Supreme Court or a decision of the Court of Appeals sitting *en banc*, a panel of the Court of Appeals, or for that matter, a district court, is not at liberty to reverse the circuit's precedent. *See Brown v. Cassens Transport Co.,* 492 F.3d 640, 646 (6th Cir. 2007). In the absence of Supreme Court precedent directly on point, a district court should decline to "underrule" established circuit court precedent. *See Johnson v. City of Detroit,* 319 F. Supp. 2d 756, 771, n. 8 (E.D. Mich. 2004). In this case, however, it

Buttressing this Court's conclusion is the fact that a majority of the Michigan Court of Appeals appeared to adopt the trial judge's prejudice analysis when they noted with approval that "The trial court held that the alibi witnesses failed to make a difference in the outcome of the case because a jury would not have found the testimony believable, and defendant agreed with Reed's trial strategy." *People v. Smith*, 2014 WL 1320243, at * 3. Because it appears that the Michigan Court of Appeals' decision "rested upon the same ground" as that of the state trial court regarding petitioner's failure to show prejudice from counsel's decision to forego the alibi defense, the AEDPA's deferential standard of review would apply to the prejudice prong. *See Sadler v. Howes*, 541 F. App'x 682, 689 (6th Cir. 2013). [4]

Secondly, assuming that *Rayner* is still good law, even in light of the explicit language of *Harrington*, the Court would nonetheless apply the AEDPA deferential standard of review to the prejudice prong of petitioner's claim because the trial judge explicitly ruled that petitioner had not been prejudiced by counsel's decision not to call alibi witnesses when he rejected petitioner's claim. In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw,* 622 F. 3d 487, 505 (6th Cir. 2010)(quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)). In this case, the trial court specifically adjudicated the prejudice prong on the merits and thus the AEDPA's standard of review would apply to this prong. *See e.g. Wolfe v. Bock*, 412 F. Supp. 2d 657, 676 (E.D. Mich. 2006),

appears that the clear language of the Supreme Court's decision in *Harrington* indicates that the AEDPA's deferential standard of review applies to both parts of a multipart claim, even if the state court only addresses one component of that claim. This Court's conclusion is supported by the logic behind the Sixth Circuit's criticism of *Rayner* in the *Hodges* decision.

[4] This Court further notes that Judge Gleicher, in her dissenting opinion, criticized both the trial judge and the Michigan Court of Appeals' determinations that petitioner was not prejudiced by counsel's decision to forego presenting an alibi defense. *People v. Smith*, 2014 WL 1320243, at * 10 (Gleicher, J., dissenting). This is further evidence that the majority of the Michigan Court of Appeals reached the prejudice prong of the *Strickland* analysis.

*aff'd*, 253 F. App'x. 526 (6th Cir. 2007)(where Michigan Court of Appeals did not address issue of ineffectiveness of counsel in its opinion, federal habeas court would consider the trial court's opinion, rendered after post-conviction evidentiary hearing, as the last reasoned decision of the state court on the issue, and apply the AEDPA standard of review to that decision).

Petitioner is not entitled to relief on his ineffective assistance of counsel claim. The Michigan trial and appellate courts' rejection of petitioner's claim was neither contrary to nor an unreasonable application of *Strickland*, so as to entitle petitioner to habeas relief.

Petitioner's ineffective assistance of counsel claim fails for several reasons.

Petitioner first contends that the state courts erred in denying his claim because these courts focused on the reasonableness of counsel's decision at the time of trial, and not when she failed to file a notice of alibi.

Petitioner is correct that counsel never filed an alibi notice, as required by M.C.L.A. 768.20(1). Defense counsel testified, however, that she informed the trial prosecutor about the alibi witnesses to the trial prosecutor, who told Ms. Reed she would not object to the presentation of an alibi defense without notice. Defense counsel was confident that the trial judge would have allowed the alibi defense despite the lack of notice. The trial judge, in denying petitioner's motion for a new trial, took judicial notice of the fact that many judges of the Wayne County Circuit Court often permitted defendants to present an alibi defense even when there had been no notice. In rejecting petitioner's claim on appeal, the Michigan Court of Appeals indicated that there was no indication that an untimely notice would have precluded the alibi defense. Where a defendant is allowed to present alibi testimony, the failure of counsel to give timely notice of an alibi defense does not result in denial of effective assistance of counsel. *See e.g. Cox v. Cardwell*, 464 F.2d 639, 640-44 (6th Cir.

1972). Petitioner has not rebutted the trial and appellate court's factual findings or legal conclusions on this issue.

Petitioner further claims that counsel was ineffective for failing to move for a directed verdict before determining whether or not to present an affirmative defense. Petitioner cannot satisfy the prejudice prong of the *Strickland* ineffective assistance of counsel test because he has not shown a reasonable probability that had his counsel moved for a directed verdict, the motion would have been granted. *Riley v. Berghuis*, 481 F.3d 315, 324 (6th Cir. 2007).

Petitioner's primary claim is that counsel was ineffective for deciding not to present an alibi defense at trial. Petitioner is not entitled to relief for several reasons.

First, counsel's decision to forego an alibi defense and instead attempt to discredit the identification testimony of the sole eyewitness is a reasonable decision that defeats petitioner's claim. Defense counsel's failure to call alibi witnesses to testify at petitioner's trial was a matter of reasonable trial strategy, and thus did not constitute ineffective assistance of counsel, where counsel instead chose to rely on discrediting the prosecution's witness by challenging the strength of his identification of petitioner as his assailant. *See Hale v. Davis*, 512 F. App'x. 516, 521-22 (6th Cir. 2013). Indeed, "[T]o support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates. All that happened here is that counsel pursued a course that conformed to the first option ... In light of the record here there was no basis to rule that the state court's determination was unreasonable." *Id.* (quoting *Richter*, 131 S. Ct. at 790)).

Counsel was also not deficient in failing to present petitioner's alibi witnesses, nor was petitioner prejudiced by this failure, in light of the fact that the proposed alibi defenses were

inconsistent. Ms. Urban and Ms. Mulroy testified at the *Ginther* hearing that petitioner was in Ms.
Urban's apartment for most of the time between 6:30 p.m. and 8:30 p.m. on the night in question.
Ms. Urban claimed that petitioner left the apartment for only five to ten minutes while Ms. Mulroy
testified inconsistently that petitioner was gone for up to twenty minutes. Mr. Mulroy, by contrast,
claimed that when he returned home to the apartment that he shared with petitioner at 7:00 p.m.,
petitioner was asleep in his apartment and was still there when Mr. Mulroy received the telephone
call from Mr. Horn at 7:30 p.m. The proposed alibi of Ms. Urban and Ms. Mulroy was inconsistent
with Mr. Mulroy's proposed alibi testimony. Because the proposed alibis were inconsistent and
could have been subjected to impeachment on this basis, counsel was not ineffective for failing to
present an alibi defense. *See e.g. Thurmond v. Carlton,* 489 F. App'x. 834, 841 (6th Cir. 2012)(trial
counsel's decision not to call an alibi witness did not amount to ineffective assistance where the
statements of the petitioner and his alibi witness were inconsistent with each other and internally).
Moreover, in light of the fact that these two alibi defenses were inconsistent, counsel could have
reasonably concluded that the alibis offered were false and could be exposed as such on cross-
examination. *See United States v. Foreman,* 323 F. 3d 498, 503 (6th Cir. 2003)(failure to call an alibi
witness was reasonable trial strategy where counsel had a reasonable basis to believe that the
witness's testimony was fabricated and that such fact would be exposed on cross-examination).

This Court also notes that Mr. Mulroy indicated that when he returned to the apartment, he
shortly thereafter received a telephone call from a man identified as Nick Horn, who told Mr.
Mulroy that the victim had accused petitioner of robbing him. This evidence would have been
bolstered the victim's identification of petitioner. Counsel could very well have decided to forego
calling Mr. Mulroy as an alibi witness out of fear that it risked opening the door to additional

incriminating testimony. This is a strategically defensible choice that defeats petitioner's claim. *See Jackson v. Bradshaw*, 681 F.3d 753, 761 (6th Cir. 2012).

Petitioner is not entitled to habeas relief because a "fair-minded jurist could conclude that counsel...made sufficient investigation of the alibi defense to support a reasonable strategic decision not to pursue the alibi defense." *Hawkins v. Woods*, 651 F. App'x 305, 311 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 828 (2017).

This Court further notes that although Mr. Mulroy claims that petitioner was at the apartment when he returned after 7:00 p.m, he was not sure as to the exact time and it could have been later in the evening. Both women admitted that petitioner left Ms. Urban's apartment. Ms. Mulroy admitted that this was for as much as twenty minutes. The crime scene was only four miles away from petitioner's apartment, giving him ample time to leave the apartment complex, commit the robbery, and return. Because there was a window of opportunity for petitioner to have committed the robbery on the night in question, petitioner was not prejudiced by counsel's failure to present an alibi defense. *See e.g. Fargo v. Phillips,* 58 F. App'x. 603, 607-08 (6th Cir. 2003). None of petitioner's proposed witnesses could have provided an "air-tight" alibi defense; counsel was not ineffective for failing to call them to testify at trial. *See Moore v. Parker*, 425 F.3d 250, 253-54 (6th Cir. 2005).

Finally, although petitioner argues that the prosecution's case was far from conclusive and that it relied almost exclusively on a single witness, "the prosecution's substantial reliance upon only one witness is not a basis to assume prejudice" based on counsel's failure to present an alibi defense. *See Marion v. Woods*, 663 F. App'x. 378, 384 (6th Cir. 2016); *petition for cert. filed* United States Supreme Court, No. 16-7762. Petitioner is not entitled to relief on his claim.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [5] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Although the Court believes that its decision to deny habeas relief was correct, the Court will nonetheless grant petitioner a certificate of appealability on his claim. Judge Gleicher of the Michigan Court of Appeals dissented from the majority opinion, arguing that counsel had been ineffective for failing to present an alibi defense. Justice Kelly of the Michigan Supreme Court, joined by Justices Bernstein and McCormack, likewise concluded that counsel was ineffective in her dissenting opinion. "When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine." *Jones v. Basinger*, 635 F. 3d 1030, 1040 (7th Cir. 2011). The fact that Judge Gleicher in the Michigan Court of Appeals and Justices Kelly, Bernstein, and McCormack in the Michigan Supreme Court would have reversed petitioner's conviction on the ground that trial counsel was ineffective for failing to present

---

[5] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

an alibi defense shows that jurists of reason could decide petitioner's claim differently or that it deserves encouragement to proceed further. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001). Accordingly, the Court will grant petitioner a certificate of appealability.

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager